Good morning, Your Honors. May it please the Court. Jessica Smith-Bobadilla for Petitioner Ashok Palyan. I'd like to reserve two minutes for rebuttal. Petitioner is a native and citizen of Armenia who applied for asylum, withholding of removal, and relief under the Convention Against Torture. His application was denied by the immigration judge in May 2003. He appealed to the Board of Immigration Appeals, and the Board of Immigration Appeals affirmed without opinion the decision of the immigration judge. Your Honors, the reason we're here today relates to two due process issues. The first is related to the integrity of the hearing in May 2003 at the Immigration Court. The record reveals that that hearing was riddled with interpreter problems, untranslated portions of the transcript, as well as interference directly with the interpreter by the immigration judge. This is especially problematic since the immigration judge grounded her decision solely on an adverse credibility finding against Petitioner in deciding he did not meet the definition of This Court's jurisprudence has considered similar cases where interpreter error or interference with an interpreter have amounted to a due process violation in that they have denied Petitioner's a full and fair hearing on the merits. The immigration judge's decision relies on — heavily on the cross-examination portion of the hearing, and this was part of the hearing that was especially riddled with these errors, these untranslated statements by the Petitioner, as well as the immigration judge going off the record and telling the interpreter at one point, don't go so far after the Petitioner had responded to a particular question. The cases that this Court has decided which touched on similar issues include Abovian v. Ashcroft, as well as Hay v. Ashcroft. And the reason why this interpreter — why an incomplete transcript or why interpreter difficulty is so problematic is that we don't have a complete record to determine whether the credibility determination was supported by substantial evidence. Since the immigration judge in this case gave no alternative reason why Petitioner did not meet the definition of a refugee under the Act, we are, to some degree, only left to guess at her reasoning. Is this — is this your due process argument of the immigration judge's, as you put it, inappropriate involvement? Yes, Your Honor. The inappropriate involvement, as well as just the interpreter problems, some of which don't appear to be — Was this objected to before the immigration judge? It was not. Petitioner — Was it — was it argued before the Board? It was raised before the Board. Was it? Well, it wasn't raised before the Board on direct appeal because — So it wasn't raised before the immigration judge. It was happening right there, no objection. It wasn't raised on appeal before the Board. Why — why then would we hear it? Why wouldn't we dismiss this? It hasn't been exhausted. Actually, it has, in that former — there was another attorney representing Petitioner at the time, and his — he did not raise this issue. And when current counsel became involved in the case and had an opportunity to review the transcript, we raised this issue with him, and he responded in a letter indicating he would review the transcript further. He never replied again. But a motion to reopen was filed with the Board, alleging ineffective assistance of former counsel. The Board did address the concerns, but found that the — in their view, the What was before the Board when you say that the problems that you assert with the interpreter were alleged and discussed with the Board? In a motion to reopen, Your Honor. Motion what? A motion to reopen. To reopen. And the Board didn't grant that? No, they did not. And that was the second petition for review filed in this matter. So the Board still hasn't reviewed this issue? Well, they did in connection with the motion to reopen. It made a decision on a motion to reopen, which demonstrates you've exhausted the issue? They decided that the equitable tolling doctrine did not apply, and that in any case their decision was that the prejudice was not clear to Petitioner based on the record. With respect to the translation, in the transcript it has untranslated. What does that mean? I believe, Your Honor, it means that Petitioner said something and the interpreter did not interpret for whatever reason. So that was apparent at the time. I can understand some of these cases where you don't have a transcript until later and you don't — and the translator comes out, couldn't hear the — couldn't understand what he was saying. But this seems that it wasn't all translated. So — I'm not sure why former counsel didn't raise the issue. It was apparent to me once I started preparing the first opening brief. Okay. Thank you. That's fair enough. Okay. So I guess, you know, the — Petitioner's argument is that the prejudice is clear and that he was denied a full and fair hearing and that the jurisprudence of this Court supports that interpreter error can amount to due process violation. It did in this case. And in terms of the Board's view that — You just — you passed over something rather quickly. You're saying that something happened as a result of the difficulties with the interpreter that wasn't interpreted. How do we know that? How do you demonstrate prejudice in this case? Well, when the sole basis for the immigration judge's denial is an adverse credibility finding, I don't believe that we can know if substantial evidence in the record supports specific cogent reasons why there was an adverse credibility finding in this case. Yes. It's the — it's your burden to do that. It's not — it's not the immigration judge's burden. It's your — Correct, Your Honor. But how can we assert that when Petitioner, again, represented by former counsel, believed he was stating certain things? The question you start off with, how can I do it? The real question is, do I have to do it? And then you get to the second one. If you have a burden to do it, then you have to demonstrate you've done it. And what you're saying is, if I understand it, because of these glitzes that don't tell us anything, the seven specific cogent reasons that the I.J. gave for not believing your client somehow get washed away. Isn't that your argument? The specific cogent reasons that she gave, some of those related to discrepancies between the asylum application and his testimony at the asylum interview and the hearing. But he gave an explanation for that, and she also didn't address why that wasn't sufficient or why that wasn't credible. I understand that, but in order to show that there was no evidence, you're saying that what wasn't in the record is what you're going to rely on to overcome the reasoning. Well, I don't think we know what her decision was grounded on because there were such problems with this hearing. So whose burden is it to show there's a problem? It is our burden, but we have illustrated there's a problem in the briefing. We can't say exactly what was missed or what he might have thought he told the immigration judge that filled in the gaps. In all cases we have, we have burdens of proof. If a person misses their burden of proof, they lose. It's just a rule we go by. Now, why would it be different here? You have the burden of proving the difficulty, the prejudice. It hasn't been done, and you say, well, I can't do it, so therefore I don't have to? Well, if the integrity of the proceedings, if we don't have a complete record, then how can we really attack specifics? Well, if that were true, then we would have cases that say that any time that there are some problems in the translation, the Petitioner is entitled to relief. And that can't be the one. But specifically on cross-examination where the adverse credibility determination was based in the immigration judge's decision, that's where there was especially a lot of untranslated responses. I think we understand your position. Thank you. We'll give you a minute on rebuttal. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Andrew Nsinga for the Respondent, the Attorney General. Before the Court today are two consolidated petitions for review, one from the denial of an asylum claim, and the second, the denial of a motion to reopen. With regards to the denial of the asylum claim, the Board properly found that Petitioner was not credible. This Court may only overturn that determination if the record compels the conclusion that Petitioner is credible. The Petitioner's claim constantly evolved. He was constantly evolving it, from his application where he mentioned two events to his interview with the asylum officer where he mentioned three events he claimed were persecution, then finally to his immigration judge hearing where he mentioned four events. Additionally, his explanations for his failure to mention these previous incidents, they themselves were inconsistent. As such, the record cannot compel the conclusion that he was credible. The asylum application, as I said, mentions two events. First, in 94 and 95 that he was caught reading the Bible and that he was fired, quote, without explanation. Second, that in 1998 he was accused of theft by his boss and his boss hit him, period. Then at his asylum interview, three events. A new one in 2000 where the police detained him and beat him on the third day. He also mentions the previous two events, but now he claims definitively he was fired because of his religion. And second, in the other incident where he claimed his boss beat him in 98, now his hand was broken, and additionally the police refused to do anything about it. When this asylum officer said, why didn't you mention this before? He said, I'm ashamed. Well, I think we've reviewed the briefs and I think that we understand your position on the merits. Speaking just for myself, I would appreciate your addressing these problems in translation. I know that the IJs are working under a lot of handicaps. But this is not very good for the system to have these kinds of errors repeatedly coming up in the records that we are called upon to review. Well, Your Honor, I think first the adverse credibility, the fact that it is not actually based on the testimony of Petitioner before the immigration judge is first relevant to the finding of no prejudice and lack of diligence with regards to the motion to reopen. With regards to the motion to reopen, it was clearly untimely. It was filed two years after the Board denied the appeal. However, Petitioner attempts to excuse it by claiming ineffective assistance of counsel. With regards to the Board's finding that there was no prejudice, the untranslated elements, Petitioner has pointed, as Your Honor has pointed out, has pointed to no evidence that would affect the outcome of this. Petitioner was not. I understand. I understand what your position is. I was asking you as it is about my concern that here we have these what appear to be obvious problems during the course of the hearing with the translations, and yet I could not see that the I.J. was concerned about it or I'm just wondering what these are recurring problems. I'm just talking about our overall duty to try to do justice here. We do have concerns because of these recurrent problems. Is the department concerned about this as well? Well, with all due respect, Your Honor, this is honestly the first time I've seen this in a transcript. I've heard of there being part of that, excuse me, portions of the record that were not understandable from the tapes, but this appears to be something that wasn't translated. But again, most of those untranslated appear to be a dialogue between Petitioner and the translator, or where the immigration judge was concerned that Petitioner was going on too long, and he says, he does, the immigration judge, slow down, but then he says we're going to lose it. The immigration judge's concern is that something will be lost. His entire concern is that something will be lost. That's fair. And you say that this, I'm just, you're saying that this is the first time that you've seen this untranslated word that seems odd. Yes. In the past once or twice I have definitively seen where there is something that appears that from the tape the transcriber could not understand. Couldn't hear the, yes. Correct. But I have not, frankly, seen this untranslated before. It may be a difference in transcriber. I, frankly, cannot answer. Thank you. Sort of the systematic concerns necessarily. Mm-hmm. But I do think with regards to the immigration judge, he showed constant concern that slow down, you're going to go, we're going to lose it. And he fulfilled his duty to build the record, to ask why there were inconsistencies between the application, the asylum officer interview, and the hearing. The immigration judge showed constant concern for that. In the untranslated matters, were they the petitioner's explanation of why there was a disparity? No, Your Honor. I think that's a good point. Their petitioner has pointed to no possible evidence that was lost that would explain all these discrepancies. There has been no petitioner submitted an affidavit. That affidavit doesn't mention anything about these errors, nothing. Petitioner would just have this Court assume prejudice and order a new hearing based on an adverse credibility that clearly is supported by substantial evidence. It appears that in a number of them, the question was asked again. Again, yes, Your Honor. As we mentioned in a brief, the petitioner would answer a question. It appears that maybe there was some, again, it's hard to tell from a record sometimes, there may have been some concern. And then the immigration judge would repeat the question, or petitioner's own counsel would repeat the question, or government's counsel would repeat the question. Finally, I'd like to briefly address that the board found that petitioner was not diligent. First, it's somewhat contradictory to claim, as Petitioner does, that it was apparent at the time, it was clear, the record was clear that there were errors, yet somehow attempt to excuse two years' delay in filing the motion to reopen. First, it was filed two years after the board, and Petitioner, from the evidence submitted by Petitioner himself, Petitioner did not keep in contact with his attorney. He didn't pay his bills. His attorney had a hard time keeping contact with him. So you cannot excuse from even from whenever that error could have been discovered up until he retained new counsel. Even when he retained new counsel in December of 2005, he didn't demonstrate diligence. Current counsel got the record in January of 2006, and then three months after this administrative record was received, then Petitioner sends a letter to former counsel. Three days after that, Petitioner files a brief with his court, arguing unexhausted in a non-exhausted argument that Petitioner suffered ineffective assistance of counsel. Then four months after that, files a motion to reopen with the board. Clearly at the time the brief was filed with this court, Petitioner clearly wanted to make a claim of ineffective assistance of counsel, but Petitioner did not in two years. And because he was not diligent, this Court can't excuse that failure on his part. Unless this Court has any further questions? I don't appear to be in. Thank you.  Just a few quick points on rebuttal. First of all, in response to Respondent's argument, there should, when trying to have, you know, compose a record of a hearing, there should be no dialogue that isn't translated between a Petitioner and an interpreter. I don't think there's any argument that there should be dialogue in another language that's not translated for the record. Otherwise, we don't really have a record, and we don't know. Would you show what actually was said that was not understood by the judge that made a difference? No, I can't. Why can't you? But the credibility determination is based on the Petitioner's overall credibility, not just specific facts that are in the record. It's based on her sense of whether he's being truthful. And if there's things he thought he was explaining — Well, wasn't it very plain what she based the credibility finding on? No, it wasn't. And actually, the immigration judge cited an incorrect standard in her decision. At page 67 of the most recent record, she said an adverse credibility finding must be supported at least by one specific cogent reason. In fact, this Court's decision in Hartooni v. INS says the IJ must have a legitimate articulate basis to question the Petitioner's credibility and must offer a specific cogent reason for any stated disbelief. Have you been able to talk to your client? Yes, Your Honor. I have. And finally, in response to the ex- But why couldn't you show what was eliminated in the lack of translating that would have made a difference? I'm not sure if it was one specific thing or explanation which could have possibly convinced the immigration judge that the overall story was credible, that his demeanor and his explanation of how these things fit together and why the application didn't match the testimony was credible and fit together, and that it made sense. You're doing the best you can. Thank you. You have the extra time. Thank you. The case just argued is submitted for decision, and we'll hear the next case, which is Singh v. INS.
judges: Wallace, Hug, Schroeder